BLUEFIELD ARMATURE COMPANY, a corporation, Appellee,

v.

R. G. POPE CONSTRUCTION COMPANY, a corporation, Appellant.

No. 75–1908.

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1976.

Decided Nov. 2, 1976.

---

Bradley Roberts, Bristol, Va., was on the brief and argued the case but died prior to the filing of the opinion.

James W. Elliott Jr., Abingdon, Va., for appellant.

Edmund C. Stone, Jr., Bluefield, W. Va. (Kwass, Stone & McGhee, Bluefield, W. Va., J. D. Morefield, Browning, Morefield & Schelin, Abingdon, Va., on brief), for the appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

This diversity case arose out of repairs on a 500 horsepower electric motor performed by Bluefield Armature Company (Bluefield) for R. G. Pope Construction Company (Pope), the owner of the motor.

The trial was to the court without a jury. The only questions are whether the judge's findings of fact were clearly erroneous as they found the motor was properly repaired, and whether the trial court erred in holding that, after it had found that the repairs done to the motor were performed in a skillful and workmanlike manner, the burden was then on Pope, if it were to escape liability on the account and prevail in a counterclaim for consequential damages, to prove that the repairs had been performed with defective workmanship. We affirm.

The motor in question had been installed some time previous to the times relevant here. It burned out July 12, 1973, and, upon being repaired and having run a few days, more trouble was encountered on July 25, 1973. This sequence was repeated twice in August, until, after more trouble near the end of September, the motor was not repaired again. Some months later, Bluefield brought suit on the account to collect the repair charges. Pope denied liability for the charges and filed its counterclaim.

The trial court stated into the record its findings of fact and conclusions of law, which are copied here:

"THE COURT:

Therefore, at this time I am going ahead and state to you orally what I find the facts to be and conclusions of law. Now since I have not written these down I want you gentlemen to pay particular attention to what the Court has to say because after I finish I'll then attempt to answer any additional facts which you gentlemen might feel that I have not covered.

"This is basically an action on contract for the repairing and rebuilding of an electric motor. The Answer filed by the Defendant and the Counterclaim filed by the Defendant raises the question as to why the motor was burned up on several occasions and the Answer also questions the propriety of the invoices that were presented by the Plaintiff for the work performed.

"Now there's no question but what the Plaintiff implied a warranty and perhaps by an expressed warranty, I believe the invoice says, 'Prompt Service', 'All Work Guaranteed'. But anyway, there's no question but what they've implied warranty that the work which the Plaintiff undertook to perform would be performed in a skillful and workmanlike manner. The Defendant says that the Plaintiff failed to properly repair and rewind the motor. The Plaintiff says that the work was performed in a skillful and workmanlike manner.

"I don't think there is a great amount of conflict in the evidence. There is some variation as to the opinions expressed by the experts, but the evidence as to what actually happened is not too much in conflict. Now I find that the Plaintiff had no

control over the source of power, had nothing to do with the startup mechanism or the equipment for starting up the motor, had no control over the protective or safety devices insofar as this machine was concerned and was not responsible for the hookup of the motor to the source of power.

"I find persuasive the testimony of both Mr. Mattox and Mr. Shrewsbury that the motor was properly rewound and that all tests required to be run were run at the plant on the repaired motor and each time the tests showed that the motor to be in proper working order, or when it left the plant. I find as particularly persuasive Plaintiff's Exhibits numbered 9 and 10. Number 9 is a letter from Mr. Shrewsbury to Mr. Pope dated December the 7th, 1973, at which time he indicated what the amount of the bill was, he indicated a willingness to accept payment of $11,740.64 at that time; he said it left a balance of $23,436.91; that he would be willing to carry this amount for a period of 90 days, but that he would have to have interest at the rate of 1½% per month for the 90-day period.

"I find as particularly significant the fact that Mr. Pope for a long period of time did not answer this letter, did not deny anything set forth in the letter, and, the letter itself was confirming a telephone conversation that had taken place between Mr. Shrewsbury and Mr. Pope.

"And then Plaintiff's Exhibit Number 10, the letter dated November the 27th, 1973, from Mr. Pope to Appalachian Power Company indicating at that time he did not question but what the work on each occasion had been performed in a satisfactory workmanlike manner. At that time he blamed Appalachian Power Company for the trouble. Now I think that he thought at that time Appalachian was at fault.

"I think that from the discovery depositions that have been taken and the evidence that he has heard and investigation, that he is truthful in now saying he thinks that Appalachian was not at fault.

"I think that the Plaintiff carried the burden of proof by its testimony that the work each time was performed at the request of the Defendant, that the work was performed in a skillful and workmanlike manner, that each time the work was tested before the machine was sent back. I'm frank to say I do not know what caused the machine, or the motor, to burn up on these four or five different occasions, but I believe the burden of proof then was shifted to the Defendant to show in what way that the work was not performed in a workmanlike manner.

"Therefore, with these findings of fact, I conclude that the Plaintiff, as a matter of law, is entitled to recover in this action and that it has proven its damages in the amount of $23,436.99. I think under the law of the Commonwealth of Virginia that the Plaintiff would also be entitled to recover interest on that amount from December the 7th, 1973, until paid. And I cannot allow interest at 1½% per month. I think the Plaintiff would be entitled to recover interest at the rate of 8% from December the 7th, 1973.

"Now, if the Court is wrong as to the burden of proof and if Mr. Roberts is right that this is a res ipsa situation and that the burden shifted over to the Plaintiff to show the exact cause of the burn-up of the engine, then the Plaintiff would not be entitled to recover and I certainly invite Mr. Roberts to take an appeal to the Fourth Circuit if he feels the Court is wrong as to the burden of Proof.

"The Court is of the opinion that the work was performed in a skillful and workmanlike manner; that there has been no showing that the motor burned up because of defective workmanship on—because of any of the work performed by the Plaintiff. Therefore, it is the conclusion of this Court that the Plaintiff is entitled to recover in the amount that I have stated and judgment will be entered for the Plaintiff in that amount.

"It goes without saying, since the Plaintiff is entitled to recover, that the Court feels that the Counterclaim is without merit and a judgment will be entered in favor of

the Plaintiff on the Counterclaim of the Defendant.

"Now, gentlemen, if there are any facts you feel the Court should state that haven't been stated, I will be glad to state them if you'll ask me at this time, or any question of law that the Court has given, at this time I'll be glad to expound further on that."

On the request of Pope, the court then found as a fact, with respect to some conflicting testimony, that Bluefield had not advised Pope to run the motor when the three phases of the motor were carrying different amperages.

■ The principal contention of Pope is that the findings of fact by the district judge were clearly erroneous. FRCP 52(a). Pope says that the district court was compelled to credit the testimony of its witnesses, the inferences from which would have tended to show that the various burnouts of the motor at issue here could only have been caused by defective workmanship on the part of Bluefield. We do not agree with Pope's conclusion. The other side of the case is that other experts, including those in charge of the repair of the motor, testified for Bluefield that the work was done in a good and workmanlike manner. Indeed, the district judge found this as a fact. He also specifically credited the witnesses Mattox and Shrewsbury, both employees of Bluefield and both experts, to the effect that "the motor was properly rewound and that all tests required to be run were run at the plant on the repaired motor and each time the tests showed the motor to be in proper working order, or when it left the plant."

With this finding in mind, and especially remembering that the judge heard the testimony ore tenus in open court, we are of opinion that his findings of fact are not clearly erroneous. He saw the witnesses and heard them testify, and questions of their credit and the weight of their evi-

dence were properly his to make. The record supports his findings.

■ Pope also complains that the district court, having found the motor to have been properly repaired, should not have required it to prove defective workmanship on the part of Bluefield to evade liability. It seeks to impose a rule akin to res ipsa loquitur, not called by that name in this court, but apparently having been called that in the district court. Of course, it seeks to invoke such rule to require Bluefield to prove the cause of the burnouts of the motor or else suffer the burden of producing evidence that its work on the motor was not negligently performed. See Darden v. Murphy, 176 Va. 511, 517, 11 S.E.2d 579 (1940). It cites no authority for the legal proposition, and we have found none.

■ Assuming for argument that Pope seeks to have the doctrine of res ipsa loquitur applied and assuming, also for argument, that the rule might colorably apply to the fact situation here,[1] we think, giving Pope the benefit of every doubt, Bluefield having made out its case, it should not be required under the doctrine of res ipsa loquitur to prove what caused the burnouts of the motor. This is true because the burden of producing evidence would not be upon Bluefield under that doctrine unless the motor were under the exclusive control of Bluefield, which it was not here. It was under the management and control of Pope. See Richmond v. Hood Rubber Products, 168 Va. 11, 16, 190 S.E. 95 (1937).

Additionally, there is much evidence in the record that the burnouts could have been caused by the source of power, the mechanism for starting the motor, the protection and safety devices concerned, and possibly the hookup of the motor to the source of power. The fact that Bluefield had no control over these matters was found as a fact by the district judge. ". . . [T]he doctrine does not apply in the case of

[1] We do not imply that the doctrine applies here. In situations applying that rule, the chattel causing the injury to something or someone else is found in the exclusive possession and control of the party sought to be impressed with the burden of producing evidence. Here, the chattel itself was harmed. No case has been called to our attention applying the rule in such a fact situation.

an unexplained accident which may have been attributable to one of several causes, for some of which the defendant is not responsible." *Arnold v. Wood,* 173 Va. 18, 25, 3 S.E.2d 374, 376 (1939). Also *Seven-Up Bottling Co. v. Gretes,* 182 Va. 138, 143, 27 S.E.2d 925 (1943).

We are thus of opinion the assignments of error are without merit, and the judgment of the district court is accordingly

AFFIRMED.